SUSAN MITCHELL, Commissioner Office of The Commissioner ofInsurance
You request my opinion concerning several questions involving two insurance risk-sharing plans continued by sec. 619.01(6), Stats., the Wisconsin Auto Insurance Plan and the Wisconsin Rejected Risk Plan.
The two plans which are the subject of this opinion are relevantly identical. Each plan provides insurance for those risks rejected by insurers in the marketplace; the Auto Insurance Plan provides auto insurance, and the Rejected Risk Plan provides workers' compensation insurance. Each plan is governed by a board which operates the plan and makes policy decisions relating thereto. And each plan requires all insurers and agents conducting the type of insurance encompassed by the plan to participate in the plan.
Because these two plans are substantially identical, my answers to your questions will be the same as to each plan.
Your first question is:
 Are the plans an unconstitutional delegation of authority under Article 4 of the Wisconsin Constitution or otherwise in violation of any other article of the Constitution?
My answer to both parts of this question is no.
Wisconsin Constitution art. IV, § 1, provides that: "The legislative power shall be vested in a senate and assembly." Legislative delegations of authority, under this constitutional command, are proper when "the purpose of the delegating statute is ascertainable and there are procedural safeguards to insure that the board or *Page 128 
agency acts within that legislative purpose." In Matter ofGuardianship of Klisurich, 98 Wis.2d 274, 280, 296 N.W.2d 742
(1980).
The purpose of the delegating statute, sec. 619.01, Stats., is readily ascertainable: the statute furthers the public interest by providing insurance protection for those unable to obtain it in the marketplace. See comment to ch. 144, sec. 22, Laws of 1969. Further, an examination of the statutes creating these plans (Auto Plan — sec. 204.51, Stats. (1967); Rejected Risk Plan sec. 205.15, Stats. (1967)), reveals that procedural safeguards were established to assure the attainment of the legislative purpose. Accordingly, it is my opinion that these plans are constitutionally valid delegations of authority.*
In addition, it is my opinion that these plans do not violate the due process and equal protection clauses of U.S. Const. amend. XIV and Wis. Const. art. I, § 1.
The insurance industry is properly subject to regulation by the state under the police power, bound up as the industry is in the public interest. Ministers Life Casualty Union v. Haase,30 Wis.2d 339, 349, 141 N.W.2d 287 (1966). A police power statute challenged on either due process or equal protection grounds will be sustained if there is any "reasonable basis" for its enactment. State v. Amoco Oil Co., 97 Wis.2d 226, 259,293 N.W.2d 487 (1980); State v. Jackman, 60 Wis.2d 700, 705-06,211 N.W.2d 480 (1973). There can be no serious doubt that the assigned-risk pool is a reasonable method by which to provide for the public welfare concerning insurance. Therefore, there is a "reasonable basis" for these plans, and they are constitutional.
Your second question is:
 Must the Boards of the Plans comply with Chapter 19, Wis. Stats., regarding public records and open meetings?
My answer to both parts of this question is no. *Page 129 
Section 19.81(2), Stats., provides that the open meetings law applies to "all state and local governmental bodies . . . ." The term "governmental body" is defined in sec. 19.82(1), Stats., to include, in relevant part, "a state or local agency, [or] board . . . ."
Note that each plan may assess member insurers to cover whatever operating costs and losses that may accrue to the plan. Neither plan receives money from the Legislature, and the ability of the plans to incur financial liability has in no way been limited by the Legislature. All moneys and property are acquired by the plans and are subject to the sole authority of the plan (not the state) as to the holding, use and disposal thereof. Liabilities incurred by the plans are their own liabilities and not liabilities of the state.
Considering these factors as a whole, and reading them in light of Lister v. Board of Regents, 72 Wis.2d 282, 240 N.W.2d 610
(1976), Majerus v. Milwaukee County, 39 Wis.2d 311,159 N.W.2d 86 (1968), and Sullivan v. Board of Regents of Normal Schools,209 Wis. 242, 244 N.W. 563 (1932), I conclude that the plans are private, independent, ongoing concerns and are not state boards or state agencies. Therefore, they are not "governmental bodies" as defined in sec. 19.82(1), Stats., and are not subject to the open meetings law.
The requirements of sec. 19.21(1), Stats., dealing with public records, fall on public officers. The crucial inquiry then is whether members of these boards are public officers.
The leading cases in Wisconsin concerning the question of who is a public officer are Burton v. State Appeal Board,38 Wis.2d 294, 156 N.W. 386 (1968), and Martin v. Smith, 239 Wis. 314,1 N.W.2d 163 (1941). These cases make clear that, to be a public officer, a position must be one of "public [not private] employment." Burton, 38 Wis.2d at 300; Martin, 239 Wis. at 332.
The plans themselves are private, independent, ongoing concerns and not state public agencies, as I have concluded above. Consonant with the plans' private status, membership on the governing boards represents private rather than public employment. As the board members hold private positions, I conclude that they are not public officers, and therefore that they need not comply with sec. 19.21, Stats. *Page 130 
Your third question is:
 Are the actions of the Boards subject to the provision of Chapter 227, Wis. Stats.?
The answer to this question is no.
Chapter 227, Stats., applies by its terms to certain agencies of the state. These agencies, delineated in sec. 227.01(1), Stats., include "any board, commission, committee, department or officer in the state government, except the governor or any military or judicial officer of this state."
As noted above, the boards are not state boards. Therefore, they are not agencies under sec. 227.01(1). Stats., so that ch. 227, Stats., does not apply to actions of the boards.
Your fourth question is:
 May the Boards hire and fire personnel without regard to Chapter 230, Wis. Stats.?
The answer to this question is yes.
Chapter 230, Stats., applies to state agencies. Section230.03(3), Stats., defines the term in relevant part to refer to "state board[s] . . . created by the constitution or statutes . . . ."
As noted above, the governing boards of the plans are not state boards. They are neither created by constitution or statute. Therefore, ch. 230, Stats., does not apply to the Boards' decisions to hire and fire personnel.
Your fifth question is:
 Are the plans subject to budgeting and appropriation procedures set forth in Chapters 16 and 20, Wis. Stats.?
The answer to both parts of this question is no.
As to ch. 16, Stats., it is clear from sec. 16.001(1), Stats., that this chapter applies only to "state agencies." The boards of the plans are not state agencies and therefore the ch. 16, Stats., procedures do not apply to them.
As to ch. 20, Stats., sec. 20.001(1), Stats., defines which agencies are subject to ch. 20, Stats. This office has previously indicated, in an unpublished opinion (OAG 47-80), that these agencies include only *Page 131 
those agencies delineated under sec. 15.02, Stats., i.e., the constitutional offices, departments and independent agencies in the state's executive branch.
The governing boards of the plans, because of their private, independent status, do not fit into any of these designations. Therefore, I conclude that these boards are likewise not subject to the requirements of ch. 20, Stats.
Your sixth and seventh questions will be considered together. They are:
 Are members of the Boards and Committees of the Plans state officers within the meaning of sections 895.45 and 895.46, Wis. Stats., when such members act within their official capacity?
 Are members of the Boards and the Committees of the Plans immune from civil liability for damages when acting within the scope of their office?
The answer to both these questions is no
Section 893.82, Stats. (formerly sec. 895.45, Stats.), bars suit against a state officer, employe or agent concerning any act committed in discharge of his or her office unless the claimant serves notice of his or her claim to the Attorney General within a specified time. Section 895.46, Stats., provides, among other things, for the state and its political subdivisions to pay judgments rendered against public officers or employes for acts committed while carrying out their duties, when such officers and employes were acting within the scope of their employment.
As noted above, board members (and, likewise, for the same reasons noted above, committee members) are members of private, independent, ongoing concerns. I, therefore, conclude that board and committee members are not state or public officers (or employes or agents) and do not enjoy the protection of secs.893.82 and 895.46, Stats.
In answer to your second question, it must be noted that the immunity from civil liability to which you refer is available to public officers and public employes, not to employes of private, independent, ongoing concerns. Scarpaci v. Milwaukee County,96 Wis.2d 663, 693, 292 N.W.2d 816 (1980); Yotvat v. Roth,95 Wis.2d 357, *Page 132 
365, 290 N.W.2d 524 (Ct.App. 1980). Since board and committee members come under the latter category, and not the former, immunity from civil liability does not extend to their acts as board or committee members.
BCL:JDJ:ewjf
* This analysis holds true whether these boards are state agencies or are private concerns, an issue dealt with later in this opinion Wisconsin courts have often upheld delegations of authority to private, independent, ongoing concerns for valid, public purposes. See, e.g., Townsend v. Wisconsin Desert HorseAsso., 42 Wis.2d 414, 423 167 N.W.2d 425 (1969); State ex rel.Warren v. Nusbaum, 59 Wis.2d 391, 208 N.W.2d 780 (1973); Stateex rel. Thomson v. Giessel, 265 Wis. 185, 60 N.W.2d 873 (1953).